UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>NICHOLAS L. SCAGLIONE,<br><br>Defendant. | Criminal Case No. 21-00030-MSM |

## GOVERNMENT'S OBJECTION TO PLACEMENT OF DEFENDANT IN THE DEFERRED SENTENCING PROGRAM AND MOTION TO SCHEDULE A HEARING

Defendant Nicholas L. Scaglione has pleaded guilty, and he is therefore subject to a mandatory term of imprisonment of 60 months. Accordingly, the United States objects to the defendant's placement in the Court's Deferred Sentencing Program (DSP), and requests that the Court, without unnecessary delay, sentence him to the 60 months of imprisonment mandated by Congress. See Fed. R. Crim. P. 32(b)(1) (providing that the Court must impose sentence without unnecessary delay); see generally United States v. Tanner, 544 F.3d 793, 796-97 (7th Cir. 2008) (Posner, J.) (noting that it is "improper for a judge to delay sentencing because he wants to give the defendant a lighter (or a heavier) sentence than the current law permits, for 'the court must impose sentence without unnecessary delay.'").

It is inappropriate to place the defendant in the DSP for several reasons. First, the services offered by the DSP are unnecessary given the defendant's age and circumstances. Moreover, the defendant is ineligible for a non-incarcerative sentence, which is the stated goal of the DSP. Thus, his successful completion of the program simply delays defendant's ability to serve his mandatory sentence of 60 months

1

imprisonment for his dangerous and destructive behavior during the riots of June 2, 2020.

Given the § 3553 principles at stake, see 18 U.S.C. § 3553(a), and Rule 32(b)(1)'s clear command that sentencing must proceed without unnecessary delay, the Court should sentence the defendant now.  A continuance that defendant did not request and that the United States opposes does not amount to "good cause," see Fed. R. Crim. P. 32(b)(2), delays the inevitable for the defendant, and denies the public the prompt justice to which it is entitled.

## FACTS AND TRAVEL OF THE CASE

On June 2, 2020, the defendant maliciously destroyed police property when he torched a new Providence Police Department cruiser that was surrounded by rioters and the officers tasked with restoring the peace that night.  The defendant's fire burned for several hours, illuminating the terrifying events of June 2, 2020 for people around the state.  When his night of destruction ended, the defendant did not show remorse or regret; instead, he boasted on social media about his wanton disregard for the law in an effort to justify his lawlessness and inspire others to engage in similar conduct.

Numerous law enforcement agencies were called to assist the Providence Police Department in its efforts to restore the peace and protect the public.  The FBI was among those agencies that assisted in the investigation of the rioters engaged in criminal activity on June 2, 2020, which included the destruction of a Providence Police cruiser.  At the conclusion of the FBI's investigation, FBI Special Agent Brendan Fogerty made application to the United States District Court for the issuance of a criminal

complaint and arrest warrant charging the defendant with violating 18 U.S.C. § 844(f)(1), malicious destruction of a vehicle by fire. (ECF Dkt. # 3) On August 17, 2020, the Court issued a warrant for defendant's arrest; after being taken into custody, he appeared before the Court the following day and was released on an unsecured bond.

On March 19, 2021, defendant waived indictment and pleaded guilty to a criminal information that charged him with the malicious destruction of a vehicle owned by an organization receiving federal assistance, in violation of 18 U.S.C. § 844(f)(1). His waiver of indictment and entry of a guilty plea were consistent with a plea agreement that his defense attorney negotiated with the government. (ECF Dkt. # 23).

On March 25, 2021, defendant appeared before this Court and entered a plea of guilty to the one-count Information. The matter was originally scheduled for sentencing on June 16, 2021. On June 14, 2021, the parties filed a joint motion to continue sentencing to allow for more thorough preparation. (ECF Dkt. # 31). The Court rescheduled the sentencing hearing to July 19, 2021.

On July 19, 2021, however, the matter did not proceed to sentencing. Instead, the Court conducted a virtual in-chambers conference with the parties.[1] The Court inquired of the Assistant U.S. Attorney (AUSA) whether the Acting United States Attorney had approved of the government's sentencing recommendation and urged the AUSA to consult with the Acting United States Attorney again about the Government's

---

[1] This conference was not recorded.

position regarding defendant's participation in the Court's DSP.  On July 23, 2021, the government requested that this matter be scheduled for a status conference, and the Court scheduled a virtual status conference for August 19, 2021.

At the chambers conference held on August 19, 2021,[2] the AUSA reported to the Court that the Acting United States Attorney had been involved in the charging decision and had concurred with the minimum mandatory sentence of 60 months of imprisonment, as did both the previous and current Chiefs of the Criminal Division.  The government objected to the defendant's participation in the DSP.  After questioning the AUSA regarding both the charging decision and the government's rationale for charging the case as it had, the Court determined that it would refer the defendant to the United States Probation Office for an evaluation for participation in the DSP.

## ARGUMENT

As set forth in the government's earlier Sentencing Memorandum, see ECF Dkt. #32, the government has considered defendant's conduct and each of the sentencing factors in 18 U.S.C. § 3553(a).  The government avers that both the charge and mandatory sentence it carries do substantial justice and are consistent with the Department of Justice's policies.  (ECF Dkt. #32).  Accordingly, the government has

---

[2] This conference was not recorded.  The United States respectfully requests either that future chambers conferences in this matter be transcribed or that a summary of what transpires at those conferences be put on the record after the conference.  The United States also asks that the Court place a summary of what transpired at the two chambers conferences on July 19, 2021 and August 19, 2021, on the record.

concluded that the charge and related minimum mandatory sentence render the defendant an inappropriate candidate for the DSP.

**The Deferred Sentencing Program**

In 2016, the United States District Court for the District of Rhode Island initiated a Deferred Sentencing Program. (U.S. District Court District of Rhode Island Notice Regarding the Court's Deferred Sentencing Program (Feb. 5, 2016), available at https://www.rid.uscourts.gov/sites/rid/files/documents/deferred/DeferredSentencingProgramNotice.pdf. The program and the criteria for eligibility to participate were broad. See Deferred Sentencing Program of the U.S. District Court at 1, available at https://www.rid.uscourts.gov/sites/rid/files/documents/deferred/DeferredSentencingProgram10.16.pdf. The program was "designed to offer an alternative to traditional conviction, sentencing, and incarceration by providing eligible defendants with a framework of supervision and services in lieu of incarceration to help them make informed decisions, engage in positive behavior, and reduce the risk of recidivism." Id.

The premise of the original DSP was that eligible defendants would be closely supervised by the United States Probation Office and would be provided with a variety of services including drug treatment, psychological counseling, and job assistance. A defendant who successfully completed the program would, regardless of the adjusted offense level determined by United States Probation, be sentenced to less than jail. Id. at 3. Between January 2016 and December 2019, thirty defendants were referred to the

DSP. At no time during this program did the Court place in it any defendants charged with crimes carrying mandatory minimum sentences.

On July 7, 2021, the United States District Court held a virtual "town hall" to discuss a new version of its DSP that the Court had adopted on June 28, 2021. During the town hall, the Court highlighted changes it had made to the program. See https://www.rid.uscourts.gov/sites/rid/files/DSP%20General%20Order.pdf. The revised DSP is "designed to offer an alternative to traditional incarceration after conviction by providing eligible participants with a framework of supervision and services in lieu of incarceration to help them make informed decisions, engage in positive behavior, and reduce the risk of recidivism." U.S. Dist. Ct. for the Dist. of R.I., Deferred Sentencing Program at 3 (June 2021), available at https://www.rid.uscourts.gov/sites/rid/files/documents/DSP%20Program%20FINAL.pdf.

**Deferred Sentencing Is Inappropriate in This Case**

The defendant in this case is not appropriately assigned to the Court's DSP because defendant faces a mandatory minimum sentence of imprisonment. As described in detail in its Sentencing Memorandum (ECF Dkt. #32), the defendant's actions on June 2, 2020, warrant a 60-month sentence of imprisonment, regardless of his personal history. Even model participation in the DSP will not erase his misconduct during the riots or obviate the need for a sentence that promotes respect for the law, affords deterrence, protects the public, and justly punishes the defendant for the harm that he caused to the citizens of Providence. See 18 U.S.C. § 3553(a)(2)(A)-(C). The

defendant's intentional (and almost gleeful) attack on a Providence Police cruiser, a symbol of law and order, endangered those around him, incited the rioters, and undermined the peaceful exercise of the constitutional rights of others, namely, freedom to assemble and freedom of speech.  Exercising its prosecutorial discretion, the United States Attorney's Office charged the defendant with arson, which carries a mandatory minimum sentence of imprisonment.  Defendant pleaded guilty to that offense, knowing that it entailed a mandatory minimum sentence.  The United States Attorney's Office remains of the view that both the charge and the mandatory minimum sentence in this case are commensurate with the seriousness of the offense and the danger that it caused.

Moreover, there appears to be little about the defendant's background to suggest that the services of DSP would be appropriate in this case.  Defendant is a 30- year-old male who is the father of two sons.  (ECF Dkt. # 26 ¶ 61).  He has described both of his parents as being loving and never resorting to physical discipline.  Id. at ¶ 60.  He reports that he is currently involved in a supportive loving relationship.  Id. at ¶ 64.  Except for social marijuana and alcohol use, he is not drug dependent and has never required substance abuse treatment.  Id. at ¶ 71.  Since dropping out of high school, defendant has been generally gainfully employed.  He has held various positions in the food service industry, most recently working for a Warwick restaurant earning $16 per hour and averaging over thirty hours per week.  He maintains a bank account and has only nominal debt.  In short, he is a mature man who managed to maintain family ties and a part-time job prior to committing arson on June 2, 2020.

DSP, on the other hand, addresses several areas and requires participating defendants to establish goals in each area in an effort to address personal characteristics that make a particular individual more likely to engage in criminal activity. None of those vulnerabilities are present here:

Target Area 1 - Cognitions – Except for situational depression and anxiety related to his current legal situation and the death of this father, defendant has reported no history of mental illness. He is not prescribed any psychotropic or mood stabilizing medications. Consequently, he does not appear to require the mental health resources DSP can provide to some defendants.

Target Area 2 - Substance Use – As described above, the defendant is essentially a social marijuana and alcohol user. He does not report alcohol or drug dependency and the crime for which he is before the Court is not drug or alcohol related. The defendant does not appear to require the level of court-supervised substance abuse treatment DSP can provide.

Target Area 3 - Pro-Social Networking – The Defendant is currently in a relationship with a woman who reports that she is prepared to provide him with housing upon his release from prison. He enjoys a good relationship with both his mother and his two sons. He has a close friend with whom he has enjoyed a supportive relationship since childhood. He enjoys spending time with his children and engaging in positive, outdoor-related activities. Defendant has an active Rhode Island driver's license and has use of a vehicle. Accordingly, it does not appear that he requires the assistance in building positive support systems that the DSP can offer many defendants.

Target Area 4 - Work and Education – Prior to asking to be laid off in anticipation of his incarceration in this case, the defendant was gainfully employed earning a living wage.  He has consistently demonstrated that he can remain employed for long periods of time.  He is familiar with the commitments and discipline required to keep a job.  Even though the defendant possesses neither a high school diploma nor G.E.D., his lack of formal education has not prevented him from supporting himself and his two children and has not been an obstacle to his finding employment.  Once again, it does not appear that the defendant requires the remedial assistance that the DSP can provide some defendants in securing and maintaining employment.

Target Area 5 - Stable Housing – Since 2019, the defendant has shared an apartment in Cranston with a roommate.  His girlfriend reports that although she does not know where she will be living when the defendant is released from custody, she currently rents a home and will welcome the defendant to live with her. The defendant has maintained stable housing and has demonstrated that he has the skill set needed to secure and maintain housing.  It is clear that he does not require the assistance of the DSP to secure and maintain housing.

Target Area 6 - Financial Literacy – The defendant maintains a bank account with a positive balance and has incurred minimal debts.  Id. at ¶ 79.  He has demonstrated sufficient financial literacy.  His involvement in arson was most certainly not motivated by financial pressures, and it does not appear that he will benefit from introductory instruction on financial literacy.

Target Area 7 - Making Amends – The government maintains that participation in facilitated meetings to reflect on the harm he caused or the writing of a letter of apology, while valuable, are insufficient to achieve the sentencing factors set forth in 18 U.S.C. § 3553(a)(2)(A)-(C) of punishment and deterrence.  Arson, the antisocial, malicious conduct in which defendant engaged, calls for punishment in the form of incarceration.  Moreover, referral to DSP and the defendant's participation in that program will not achieve one of the central goals of criminal sentencing -- general deterrence.

**Deferring Sentence Will Result in an Unreasonable Delay in Sentencing Contrary to Federal Rule of Criminal Procedure 32(b)(1)**

During the August 19, 2021 status conference, the Court stated, in substance, that it was referring the defendant to DSP in the hope that the government would change its position that a five-year mandatory minimum sentence is warranted in this case.  The government respectfully advised the Court during the status conference, and asserts again here, that a mandatory minimum sentence in this case is appropriate.

The government contends that the Court's plan to delay sentencing by placing the defendant in the DSP is unfair to the defendant and contrary to Rule 32(b)(1)'s requirement that the Court impose sentence without unnecessary delay.  If enrolled in the DSP, the defendant would be subject to an extra year of exacting supervision by the United States Probation Office and the Court, after which he would receive the mandatory minimum sentence of five years of imprisonment.  Given the very serious nature of the offense and the aggravating circumstances surrounding the defendant's

criminal conduct as described in the government's earlier sentencing memorandum, there is no basis for altering the charge to which the defendant has already pleaded guilty, and the government cannot, consistent with the gravity of the defendant's conduct, accede to an outcome that does not result in a meaningful sentence of incarceration.

The defendant's lawless conduct warrants punishment. Far from being a peaceful demonstrator engaging in the lawful exercise of political speech, defendant in this case endeavored to create chaos and to exact revenge against the police for perceived personal wrongs. Because he committed violent and dangerous acts, a significant sentence of imprisonment is necessary to satisfy the objectives of 18 U.S.C. § 3553(a).

The public is entitled to the timely and just punishment of convicted defendants. Congress determined that the appropriate sentence for the arson defendant committed is 60 months of imprisonment. Defendant pleaded guilty to arson, knowing that he was subject to a five-year mandatory minimum term of imprisonment. The DSP should not serve as a vehicle to delay the sentencing of a defendant who is subject to a statutorily mandated term of imprisonment, or to avoid the imposition of such a sentence. The Court should sentence the defendant without unnecessary delay.

## CONCLUSION

Based on the reasons discussed above as well as the arguments set forth in the government's Sentencing Memorandum, the government objects to the defendant's placement in the DSP and requests a hearing so that the parties can fully articulate on

11

the record their positions concerning defendant's placement in the DSP. The government further respectfully requests that the Court schedule the defendant's sentencing "without unnecessary delay," as Rule 32(b)(1) requires.

UNITED STATES OF AMERICA

RICHARD B. MYRUS
Acting United States Attorney

/s/ William J. Ferland
WILLIAM J. FERLAND
Assistant United States Attorney
50 Kennedy Plaza 8th floor
Providence, Rhode Island 02903

### CERTIFICATION

I, William J. Ferland, hereby certify that I served a copy of the Government's Objection to Placement of Defendant in the Deferred Sentencing Program and Motion to Schedule a Hearing, upon counsel of record by filing same through the Electronic Court Filing system this 8th day of September 2021.

/s/ William J. Ferland
WILLIAM J. FERLAND
Assistant United States Attorney
50 Kennedy Plaza 8th floor
Providence, Rhode Island 02903
